The Salem Lutheran Home Association of the Bay Cities v. Commissioner.
Salem Lutheran Home Assn. of the Bay Cities v. Commissioner
Docket No. 111245.
United States Tax Court
1943 Tax Ct. Memo LEXIS 283; 2 T.C.M. (CCH) 157; T.C.M. (RIA) 43250; May 26, 1943
*283 Alfred Nelson, Esq., 701 Central Bank Bldg., Oakland, Calif., for the petitioner. Alva C. Baird, Esq., for the respondent. SMITH Memorandum Opinion SMITH, J.: This proceeding involves deficiencies in income tax and excess profits tax for 1938 in the respective amounts of $5,205.41 and $4,125.18. The question in issue is whether petitioner is exempt from tax as a corporation organized and operated exclusively for charitable purposes, or, in the alternative, whether its receipts during the taxable year from fees paid by its guests were in whole or in part trust funds and therefore not includible in gross income. [The Facts] Petitioner is a corporation located at 2361 East 29th Street, Oakland, California. It filed its return for 1938 with the collector of internal revenue for the first district of California. Petitioner was first organized in 1924 by a group of ministers and members of the Lutheran churches of the Augustana Synod in the vicinity of San Francisco, California, to operate a home for the aged. It was incorporated under the laws of the State of California as a nonprofit corporation in 1927. The articles of corporation read in part as follows: SECOND. That the purposes *284 for which it is formed are charitable and benevolent purposes and especially; (a) To establish and maintain a home where deserving aged men and women may be received and cared for in a Christian manner; (b) To purchase and own such real estate and other property as may be necessary for the purpose of the corporation; and (c) For the purposes above specified, to receive donations, to receive, manage, take and hold real and personal property, by gift, grant, devise, and (or) bequest, and in general to do any and all things necessary to carry out the purposes of this Corporation. The articles of incorporation further provide that petitioner shall have no capital stock and that it shall exist for a term of 60 years from the date of incorporation. There were 12 incorporators, all of whom were named as directors, including four Lutheran ministers. By-laws were adopted governing most phases of petitioner's operations. They provide in article I that: This corporation shall issue no stock or shares. No member or other person shall receive any profit, dividend, share, income or monetary or property benefit of any kind by reason of being an annual, life or honorary or other member of The *285 Salem Lutheran Home Association of the Bay Cities, and said corporation shall neither issue nor pay any profit or dividend to any person, nor shall any person, firm or corporation receive any monetary or property benefit from said Home, except as fair and reasonable payment for services rendered or goods delivered to or for said Home. The Salem Lutheran Home Association of the Bay Cities is and shall be conducted as a benevolent, non-profit organization, existing and operating for the benefit of its guests, and not for the private enrichment, profit or gain of any person. Membership with good standing in said Association entities such member to vote at all membership meetings, and to visit the said Home at such times as may be deemed reasonable by the Board of Directors and Martron, but does not entitle such member personally to participation in or receipt of or claim upon any property, money, surplus, profits, income, interest or right of said Association. All money and property of every kind now held by said corporation and which may at any time in the future be received by said corporation shall be used exclusively for the welfare of present and future guests of said Home, under *286 supervision of the Board of Directors of said Home. The by-laws provide for the issuance of annual, life and honorary memberships. The cost of the annual membership was originally $5 but later reduced to $2.50. The cost of life membership is $100. The members as such acquire no economic interest in petitioner's assets and are entitled to no preference over nonmembers. Meetings of the members are held annually for the purpose of electing directors. The directors determine all matters of policy. All directors and officers must be members of the Association in good standing and also members of a Lutheran Church of the Northern District of California Conference of Augustana Synod. The officers consist of a president, vice-president, and secretary and treasurer, all of whom are selected by the directors. The active management of petitioner's business is under a superintendent or matron. The president and vice-president receive no salary. The secretary and treasurer receive a nominal salary of $10 per month each. The superintendent, who also serves as chaplain, receives $100 a month. The directors receive no compensation for their services. Guests are admitted upon application approved *287 by a committee of the board of directors. Any person of the Caucasian race 65 years of age or older and of good character is eligible for admission. Upon approval of the application for admission a formal contract is executed by petitioner and the applicant stating the amount to be paid to petitioner and the obligations assumed by petitioner. The amount charged each guest for life care is determined on an actuarial basis. The standard charge in the taxable year 1938 for a guest 65 years of age was $4,250. For older guests that amount was reduced $100 for each year by which the guest's age exceeded 65 years. Petitioner had 46 paying guests in 1938, including 11 men of an average age of 78.5 years and 35 women of an average age of 69.48 years. The average net annual operating cost per person as determined by petitioner's accountant was $430.88. Each guest has a separate outside room, some with private baths. Only a few guests have ever been admitted, and those only temporarily, without charge. An endowment fund has been established for the purpose of caring for indigent persons free of charge but it is not yet sufficient for any extensive use. When petitioner first began operations *288 in 1924 its facilities consisted of an eight-room residence and a few city lots on which it constructed cottages. The money for the down payment on the property was borrowed from a bank. Petitioner's present main building was constructed in 1931 at a cost of $95,000. It has living accommodations for 30 guests. It also has a library and a large reception hall which is used for lectures, concerts, and other such purposes, and from time to time as a meeting place for various religious and charitable organizations. Petitioner also has a modern, well equipped dispensary for the exclusive use of its guests and maintains a corps of seven training nurses. Many of petitioner's guests require special nursing care and preparation of food. All of petitioner's resources and activities are directed to the care and comfort of its guests. The guests receive many services which are not required under their contracts with the petitioner. The officers and employees are selected because of their interest in the Home and the work of caring for the aged. Many of them render services considerably beyond the requirements of their employment. Others who are not employees of the petitioner render services *289 free of charge or at much reduced charges. One of the leaders in petitioner's organization was Carl O. Lundquist who for a number of years served as clergyman for one of the Lutheran churches in San Francisco. He resigned that position which paid him a salary of $200 a month in 1939 to become petitioner's superintendent at a salary of $100 per month. Petitioners' head nurse, who also serves as house mother, receives a salary of $75 a month. In coming to work for the petitioner she resigned a position as surgical supervisor in a hospital in Minnesota which paid her a salary of $200 per month. Petitioner had a reserve fund or surplus in 1938 of approximately $206,000. Its total donations up to that time amounted to about $18,000. All of its other funds were derived from the fees paid by guests and bank interest on its funds. [Opinion] The respondent concedes that a substantial part of petitioner's reserve funds is held for the life care of its guests and therefore would not in any event constitute taxable income. He contends, however, that the amounts received from the gifts were in excess of their requirements for life care during their life expectancies and that this excess *290 is subject to income tax. The statute (section 101 (6) of the Revenue Act of 1938) exempts from taxation all corporations organized and operated exclusively for charitable purposes, no part of the income of which inures to the benefit of any private shareholder or individual and no substantial part of the income of which is used to carry on propaganda or otherwise influence legislation. Since admittedly the other requirements for exemption are met, our only question here is whether petitioner is operated exclusively for charitable purposes. In other words, is the operation of a home for the care and comfort of aged persons, without profit to any individual and from purely religious or philanthropic motives, a charity within the intendment of the statute? We think that it is. The broad purpose of the statute is to exempt from the burden of tax those institutions and endeavors devoted exclusively to the physical and spiritual betterment of mankind. These exemptions "were begotten from motives of public policy, and are not to be narrowly construed." . Exemption from taxation is "not a matter of grace or favor; it is rather *291 an act of public justice.' . The evidence before us leaves no doubt as to the purely charitable nature of petitioner's activities and purposes. Its property and income is held for the exclusive benefit of the aged persons under its care and not for the benefit of any of its members. Cf. . None of its income ever has been or ever can be used for any purpose except the care and comfort of its guests. It is open to all persons who can qualify under its general rules of admission regardless of their religious beliefs or affiliations. It does not operate for the benefit of any select group of individuals or institutions. The fact that it is necessary for petitioner to charge a substantial admission fee in order to carry on its work does not deprive it of the statute of a tax exempt corporation. . It is the purpose for which the funds are used and not the manner of their acquisition which determines petitioner's right to tax exemption. Since we have found that petitioner is *292 exempt from taxation it is not necessary for us to discuss its alternative contention that all of its funds are trust funds and that consequently it has no taxable income. Decision of no deficiencies will be entered.